IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NOEL PUCHEL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY JACOBY, in her official capacity as the Acting Chief Records Officer for the Illinois Department of Corrections,<br><br>    Defendant. | No. 24-cv-3294<br><br>Hon. Michael M. Mihm<br>Magistrate Judge Jonathan E. Hawley |

## FIRST AMENDED COMPLAINT

Plaintiff Noel Puchel, individually and on behalf of all others similarly situated, complains against Defendant Nancy Jacoby as follows:

### Nature of the Case

1.    Plaintiff challenges the constitutionality of an Illinois Department of Corrections ("IDOC") policy regarding crediting time spent in prison towards completion of an individual's sentence of Mandatory Supervised Release ("MSR"). In particular, individuals who are imprisoned for violations of the conditions of their MSR or who voluntarily choose to "max out" their MSR terms in prison receive credit against the completion of their MSR periods while in prison, whereas individuals who spend extra time in prison due to an error of the sentencing court do not receive any credit against the completion of their MSR periods for extra time they spend in prison.

2. Plaintiff alleges that this policy violates the Fourteenth Amendment of the United States Constitution.

3. As explained in detail below, Plaintiff Noel Puchel served an additional one year and three months in prison beyond the completion of his court-imposed prison sentence because of an error by his sentencing court. After the court corrected his sentence, he was awarded no credit towards completion of his MSR term for the extra time he spent in prison. Meanwhile, individuals with similar convictions and sentences who choose not to be released from prison at the completion of their prison terms receive credit towards completion of their MSR terms for the additional time they serve in custody.

4. Plaintiff, individually and behalf of those similarly situated, seeks an injunction ordering Defendant Nancy Jacoby, the Chief Records Officer for the Illinois Department of Corrections, to cease enforcement of the challenged policy.

## Jurisdiction and Venue

5. Jurisdiction for Plaintiff's claims is based on 28 U.S.C. §§1331 and 1343(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred within this district.

## The Parties

7. Plaintiff Noel Puchel is a 77-year-old resident of Chicago, Illinois. He was released from Taylorville Correctional Center on July 3, 2024, on to MSR after

2

having been convicted on March 11, 2024, of one count of criminal sexual assault arising from an offense that occurred in January of 1998.

8.      Defendant Nancy Jacoby is the Records Department Supervisor of the Taylorville Correctional Center in Taylorville, Illinois and the acting Chief Records Officer for the Illinois Department of Corrections. As the Chief Records Officer, Jacoby has Department-wide authority for enforcement of the challenged policy. She is sued in her official capacity.

### Relevant Provisions of Illinois Law and IDOC Policy

9.      Under Illinois law, individuals convicted of felonies and sentenced to serve time in the IDOC (with the exception of those sentenced to natural life imprisonment), are given two separate sentences: (1) a term of imprisonment; and (2) a term of post-incarceration community supervision called "Mandatory Supervised Release." 730 ILCS 5/3-3-3(c); *see also People v. O'Connell*, 2015 IL App (3d) 130739-U, ¶ 17 (Ill. App. 2015) (explaining that a criminal sentence under Illinois law "consists of two separate parts: a period of imprisonment, and a period of MSR.").

10.     Individuals serving a sentence of incarceration in the IDOC are statutorily entitled to receive "sentence credits" for the days they spend in prison. These credits reduce the amount of time they must spend in prison to complete their sentence. 730 ILCS 5/3-6-3. As relevant to this case, an individual convicted of committing criminal sexual assault prior to June 19, 1998, "shall receive one day of sentence credit for each day of his or her sentence of imprisonment." 730 ILCS 5/3-

3

6-3 (a)(2.1) (colloquially referred to as a "50 percent" sentence). An individual convicted of committing criminal sexual assault on or after June 19, 1998, "shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment." 730 ILCS 5/3-6-3 (a)(2)(ii) (colloquially referred to as an "85 percent" sentence).

11. Individuals who are entitled to receive sentence credits while serving a term of incarceration in IDOC are also entitled to receive credits at the same rate when they are "recommitted" to prison by the Prisoner Review Board ("PRB") following a violation of a condition of MSR. *See* 730 ILCS 5/3-6-3 (a)(2.1) ("a prisoner who is serving a term of imprisonment shall receive one day of sentence credit for each day of his or her sentence of imprisonment *or recommitment under Section 3-3-9.*") (emphasis added). For example, an individual with 50 percent sentence can complete a one-year MSR term in prison by serving six months in IDOC (*i.e.*, half of the total MSR term).

12. Individuals on MSR in the community who are "revoked" due to violation of the conditions of their MSR are reimprisoned for "the total mandatory supervised release term, less the time elapsed between the release of the person and the commission of the violation for which mandatory supervised release is revoked." 730 ILCS 5/3-3-9 (a)(3)(B). Once a "revoked" person serves the rest of their MSR term in prison (minus applicable sentence credits), they are released to the community without further supervision. For example, an individual with a 50 percent sentence and one-year term of MSR who is revoked after spending six months on MSR in the

4

community will complete his MSR after serving an additional three months in prison (*i.e.*, half of the remaining six months of the MSR term).

13. Pursuant to IDOC policy, individuals who do not have an approved place to live while on MSR are "violated at the door" when they complete their sentences of incarceration. That means that the individual is never actually released from prison to serve their MSR in the community. Rather, they remain incarcerated and are deemed to be in "violation" of the MSR before they are ever released. *See Cordrey v. Prisoner Review Bd.*, 2014 IL 117155, at ¶10, (2014) ("Cordrey's complaint alleges that more affluent offenders, who can afford suitable housing, can walk out the prison door, while the indigent offender is violated at the door and sent back to prison.")

14. Pursuant to IDOC policy, individuals who are "violated at the door" can "max out" their MSR time in prison. This means that their terms of MSR continue to run while they are in prison and once they serve the entirety of their MSR time behind bars, the Department releases them without any further supervision in the community after release.

15. Individuals "violated at the door" also receive sentence credits during their MSR periods which shorten the amount of time they serve in IDOC while on MSR. For example, an individual who is entitled to "day-for-day" sentence credits can "max out" a one-year MSR term by serving six months in prison. *See* 730 ILCS 5/3-6-3 (a)(2.1).

5

16. Pursuant to IDOC policy, individuals are permitted to voluntarily opt to "max out" their MSR terms in prison rather than serving their MSR in the community. Some individuals choose to "max out" their MSR terms to reduce the amount of time they must remain in Department custody and/or avoid the significant burdens of MSR. Such individuals serve their entire MSR periods in prison (minus applicable credits) and are then released without any further supervision.[1]

17. In summary, under Illinois law and IDOC policy, individuals in custody are (as a general matter) allowed to serve their MSR terms in prison. Once they have completed their MSR time, they are released without supervision in the community.

18. The Department has a different policy for individuals who serve extra time in prison due to a sentencing error rather than a violation of a condition of MSR or a voluntary decision to "max out" their MSR term in prison.

19. According to a 2006 memorandum in the IDOC's Record Office Training Manual, an individual who receives a reduced sentence from a court that results in their having served more time than required to satisfy their prison sentence will not receive any credit towards completion of their MSR term for the extra time served

---

[1]    To be clear, "maxing out" one's MSR term in prison is an option only for individuals with determinate MSR sentences (*e.g.*, terms of one, two, or three years); it is not an option for individuals with indeterminate MSR sentences (*e.g.*, three-years-to-life). Under Illinois law, individuals with three-years-to-life MSR sentences do not receive any MSR credit for time served while in prison on MSR pursuant to 730 ILCS 5/3-14-2.5(e), which provides that "the term of extended mandatory supervised release ... shall toll during any period of incarceration" for people sentenced to three-years-to-life on MSR under 730 ILCS 5/5-8-1(4)(d).

6

in prison. *See* ECF 16-2, Training Manual Excerpt, at ¶¶1-6. Rather, the extra prison time doesn't count for anything, and the individual's MSR term does not commence until after the person is released to the community. This is so even if the person has served more than enough additional time in prison to "max out" their MSR term.

20. Thus, no matter how much extra time the individual has served in prison, he will still be required to serve a term of MSR in the community to satisfy his sentence and be discharged from IDOC custody.

21. While on MSR after release, a person who was detained in IDOC due to a sentencing error will be subject to substantial deprivations of liberty, including but not limited to the following:

- Restrictions on accepting employment, enrolling in school, or changing his residence without the prior approval of a parole agent (730 ILCS 5/3-3-7 (a)(9); (b-1)(4));

- Searches of his person, property, and residence (730 ILCS 5/3-3-7 (a)(10)); and

- A prohibition on leaving the state without advance permission (730 ILCS 5/3-3-7 (a)(9)).

22. Those convicted of sexual offenses are subject to additional restrictions while on MSR, including the following:

- A requirement to wear a GPS ankle monitor (730 ILCS 5/3-3-7 (a)(7.7); (17));

- Mandatory attendance at sex offender therapy for which the parolee must pay a weekly fee (730 ILCS 5/3-3-7 (a)(7.5));

- Polygraph examinations for which the parolee must pay a fee (730 ILCS 5/3-3-7 (b-1)(16)); and

7

- Restrictions on using the Internet (730 ILCS 5/3-3-7 (b)(7.6)–(7.9); (7.11), (7.12));

23. A person who violates any of these conditions is subject to being "revoked" and reimprisoned. 730 ILCS 5/3-3-9 (a).

24. In contrast, a person who "maxes out" his MSR term in prison or violates his MSR will not be subject to any of these conditions upon release.

25. Thus, pursuant to the Department's policy, a person who serves extra time in prison through no fault of their own is treated less favorably than a person who violates their MSR conditions and is revoked.

26. There is no statute or court decision that mandates that IDOC employ such a policy. Rather, it is the Department's choice to adopt such a policy.

27. The Department's training manual cites the U.S. Supreme Court's decision in *U.S. v. Johnson*, 529 U.S. 53 (2000) as the basis for its policy. *See* ECF 16-2, Training Manual. In *Johnson*, the Supreme Court held that under the federal sentencing statute, 18 U.S.C.S. § 3624(e), excess prison time served by a federal prisoner is not credited towards completion of a term of supervised release the individual had not yet served. Application of *Johnson* to Illinois prisoners is illogical because *Johnson* was a case of statutory interpretation and Illinois MSR is structured differently from federal supervised release.

28. One major difference between the federal and Illinois systems is that a federal prisoner cannot "max out" his supervised release term in prison voluntarily or if he is revoked for violating a condition of his supervised release. Rather, when

federal supervised release is revoked, the court determines an appropriate period of reimprisonment and the prisoner continues his supervised release term in the community after release from reimprisonment. Thus, under federal law, the rule articulated in *Johnson* does not result in the disparate treatment of individuals who are revoked versus those who serve additional time due to a sentencing error—both categories of individuals must serve their full supervised release periods in the community. As explained, Illinois, in contrast, allows a person in state custody to "max out" his MSR in prison voluntarily or after revocation.

29.   At least one district court has noted that it is inappropriate to apply the holding of *Johnson* to persons in Illinois custody because "*Johnson* involved a federal inmate seeking release under federal law." *Brzowski v. Sigler*, No. 17 C 9339, 2021 U.S. Dist. LEXIS 115054, at *8 (N.D. Ill. June 21, 2021) (Kennelly, J.).

**Duties of the Records Office**

30.   IDOC's Administrative Directive 01.07.400, titled "Sentence Calculation for Individuals in Custody," sets forth the duties of the Records Offices at IDOC facilities. It provides that the Records Offices have the responsibility to "accurately calculate, and recalculate if necessary, sentences for all individuals received at their facilities." *Id.* at § II (F)(1).

31.   The duties of the Records Office include calculating the amount of sentence credits an individual in custody is entitled to receive; determining the individual's release date; determining the amount of time the individual must serve

on MSR; and determining the date the individual will be discharged from MSR by applying Illinois law and IDOC policy. *Id*. at § II (F)(6).

### Factual Allegations Regarding Mr. Puchel

32. On March 11, 2024, Mr. Puchel was convicted of one count of criminal sexual assault for offenses that occurred in January of 1998.

33. His original sentence called for him to serve a sentence of seven years at 85 percent, plus a three-years-to-life term of MSR.

34. On May 28, 2024, the sentencing court entered an amended sentencing order, and issued an amended mittimus sentencing Plaintiff to seven years at 50 percent, plus a one-year term of MSR.[2]

35. Mr. Puchel was in jail or prison from October 23, 2019, to July 3, 2024. More particularly, from the date he was arrested on October 23, 2019, to March 22, 2024, he was held in the Will County Adult Detention Facility awaiting trial and sentencing. On March 22, 2024, he was transferred to the custody of the IDOC. He remained in IDOC until his release from prison on to MSR on July 3, 2024. Mr. Puchel was incarcerated for a total of 1,715 days.

36. Pursuant to IDOC Administrative Directive 01.07.400, the IDOC uses a 30-day month (or a 360-day year) to calculate the amount of time a person must

---

[2] On information and belief, the court issued the amended mittimus on its own volition. Though Plaintiff was convicted of his offenses in 2024, the offenses were committed in 1998, and thus he was entitled to be sentenced under the law in place at the time of the offense. Under the law in place in 1998, Plaintiff's offense called for a one-year term of MSR (not a three-to-life term, which would have applied if the offense(s) had been committed after 2005) and a seven-year prison sentence to be served at 50 percent (not 85 percent, which would have applied if the offense(s) has been committed after June 19, 1998).

serve in custody on a felony sentence. Thus, to complete his seven-year prison sentence at 50 percent, Mr. Puchel had to serve 1,260 days (calculated as (360 * 7) / 2).

37. Mr. Puchel served 450 days in prison beyond the time necessary to complete his full prison term.

38. With sentence credits, an individual with a 50 percent sentence can complete a one-year MSR term in prison in 180 days (calculated as (12 * 30) / 2). Thus, given that Puchel served 450 extra days in prison, he had served more than enough time to complete his MSR term.

39. But pursuant to the Department's policy, Puchel was not given any credit towards completion of his MSR for the 450 extra days he served in prison. He remains on MSR today subject to significant restraints on his liberty as outlined in paragraph 21 and 22.

40. Meanwhile, individuals in IDOC custody who have been revoked for violation of the conditions of the MSR or who have voluntarily chosen to remain in prison during their MSR periods are receiving credit towards completion of the MSR while in IDOC. Once they serve enough days to satisfy their MSR terms, they will be released from custody without any supervision.

41. The Department's policy has directly resulted in Plaintiff Puchel being placed on to MSR and subject to its constraints when others with similar convictions and sentences are not.

## Class Allegations

42.   Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of this complaint as a class action for purposes of equitable relief on behalf of a class defined as follows.

- All individuals currently or in the future in the custody of the Illinois Department of Corrections whose sentences include a term of MSR imposed by an Illinois court.

43.   The class seeks a declaration that the Department's policy of denying credits against the completion of an MSR term to individuals who spend extra time in prison due to an error of the sentencing court violates the Fourteenth Amendment and an injunction prohibiting continued enforcement of the policy.

44.   The proposed class is numerous. It includes not only the 20,000-plus persons currently in IDOC custody on felony sentences, but also as yet unknown future members of the proposed class—*i.e.*, persons who in the future will be in IDOC custody on MSR and subject to the unlawful policy. This is so notwithstanding the fact that not all members of the proposed class will be injured by the unconstitutional policy (*i.e.*, not all members of the class will receive an amended sentencing order that results in a sentence reduction). *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (holding that it is "almost inevitable" that a class will "include persons who have not been injured by the defendant's conduct," and "[s]uch a possibility or indeed inevitability does not preclude class certification.")

12

45. There are questions of law and fact common to all class members, including but not limited to the following:

- What is the Department's policy regarding crediting time in custody against the completion of MSR terms;
- What are the Department's rationales for the difference in treatment between parole violators and persons who have served additional time due to a sentencing error; and
- Does the difference in treatment violate the Fourteenth Amendment.

46. All individuals falling within the class definition are subject to the same policy. Given the commonality of the questions pertinent to all class members, a single injunction would provide relief to each member of the class.

47. Defendant Jacoby has acted and continues to act in a manner adverse to the rights of the proposed class, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

48. The named Plaintiff will fairly and adequately represent the interests of the class; and the named Plaintiff's claims are typical of the claims of all members of the proposed class.

49. Plaintiff's counsel have extensive experience and have devoted substantial professional and financial resources to representing individuals on MSR in Illinois, including numerous class action cases on behalf of persons on MSR. *See, e.g., Montoya v. Jeffreys*, 18-cv-1991 (N.D. Ill.) (challenge to MSR policies imposed by the Department); *Tucker v. Jeffreys*, 18-cv-3154 (N.D. Ill.) (same); Barnes v. Jeffreys, 21-cv-2137 (N.D. Ill.) (same). Plaintiff's counsel will fairly and adequately represent the interests of the class.

## COUNT I
## 42 U.S.C § 1983
## Fourteenth Amendment

50. Plaintiff realleges and reincorporates, as though fully set forth herein, each and every allegation above.

51. The Department's policy violates the Fourteenth Amendment in at least two ways: (1) it is irrational to deny sentence credits against the completion of MSR to individuals who serve extra time in prison through no fault of their own while awarding such credits to individuals imprisoned during their MSR terms due to violations of their MSR; and (2) it violates the Equal Protection Clause to treat persons with similar convictions and sentences differently based solely on whether their original sentences were amended.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a. certify that this case may be maintained as a class action on behalf of all persons in IDOC custody serving sentences that include a term of MSR:

b. enter a declaratory judgment that the Department's policy violates the Fourteenth Amendment;

c. enter an injunction prohibiting the Department from continuing to enforce its unconstitutional policy;

d. enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

e. grant Plaintiff any and all other relief as law and justice demand.

Respectfully submitted,

/s/ Mark Weinberg
/s/ Adele D. Nicholas
*Counsel for Plaintiff*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

15